AMERICAN NATIONAL BANK, Respondent, *v.* HARRISON WIRE COMPANY, Appellant.

February 21, 1882.

The purchaser before maturity of a negotiable promissory note, took the check of the indorser for the amount, after protest, under an agreement to sue the maker, and if successful to return the check to the indorser, and if not successful to cash the check in payment of the note.   The holder had no notice of any equities between the maker and indorser until after this agreement.   The maker set up the fraud of the indorser in obtaining the note and filed a cross-bill for equitable relief.   *Held,* that the holder had a legal right to do what he agreed to do ; that the check was not given nor accepted in payment of the note ; and that, the indorser being a non-resident and not being a party to the action, the holder was entitled to recover on the note without any condition as to the disposition of the check.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.*

E. T. ALLEN, for the appellant.

E. T. FARISH, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

This was an action upon three negotiable promissory notes, executed by defendant, a business corporation of St. Louis, to the order of E. S. Wheeler & Co. These notes were each payable ninety days after date, at the Bank of Commerce, St. Louis, were dated respectively April 20, 22, and 24, 1880, and were for the sums of $2,497.66, $5,267.46, and $3,667.51. The notes were transferred by indorsement before maturity, for value, to plaintiff; presentment was duly made, and the notes were protested for non-payment.

There was a finding and judgment for plaintiff. There is no conflict of evidence. It appeared from the admissions and evidence, that the St. Louis Wire Fence Company, of St. Louis, had a contract with E. S. Wheeler & Co., of New Haven, Connecticut, to purchase wire. On April 28, 1880, this company sent the following telegram to Wheeler & Co.: "No orders for our product; absolutely standing still. No room for the wire. You know how difficult trade is to anticipate. You should respect our telegraphic request. We cannot carry the wire. Recall your draft dated after 17th. Have seen Harrison Wire Company, who will relieve us by taking wire on the way, and balance of one thousand tons due on contract, on ninety days' acceptance from date of invoice. Accept this, and let us out. We will stand interest. We prefer contract cancelled. Answer at once, that we may close the matter with the Harrison Wire Company."

To this, Wheeler & Co. answered, on the same day: "Drafts have gone forward; arrange with Harrison to take care of them. Will give Harrison ninety days on balance of contract."

The notes in suit were forwarded by the Harrison Wire Company to Wheeler & Co., enclosed in a letter dated

April 30, 1880, in which the Harrison Wire Company say to Wheeler & Co. : —

" The St. Louis Wire Fence Company have made arrangements with us to assist them in taking care of the balance of No. 12 wire due them on their contract with you, for one thousand tons, and have handed us bills for shipments of 17th, 20th, 22d, and 24th inst., for which bills we enclose our notes." (The notes in suit are then described, as also a similar note dated April 17th, for $4,974.42.) " Upon notice of arrival of above billed wire here, we will take up the drafts already drawn by you by our checks, to get possession of the bills of lading, and draw on you at sight for a corresponding amount. In making future shipments, you will please consign wire to us, sending bill of lading to us ; and we, upon receipt of wire, will mail you our note in settlement of bills, if correct. We will take up draft due to-day, and draw on you as above. * * * Please honor drafts for payment of enclosed notes."

On May 4th, Wheeler & Co. wrote to Harrison Wire Company, acknowledging receipt of the last letter, and enclosures, and proceed : " The St. Louis Wire Fence Company have treated us very badly in this matter, and much as we dislike to resort to harsh measures, they have compelled us to take such steps in this matter as will protect ourselves. We have paid the first draft that you have drawn, for $4,900 ; but should prefer not to honor any further drafts until we hear from them in regard to their action touching the remainder of the contract. * * * We are surprised that you made the note payable in St. Louis without exchange, and that you added no interest, and that you draw on us with exchange."

When this letter was written, Wheeler & Co. had already applied to plaintiff to discount the notes of the Harrison Wire Company, and whilst they failed to take up the drafts drawn for the notes of April 20th, 22d, and 24th, in suit, they discounted all four of the notes on May 5th, in

plaintiff's bank. Plaintiff had no notice whatever of the manner in which Wheeler & Co. obtained these notes, until after their maturity. The first of the four notes, that of April 17th, was duly paid. The other notes were protested; and all proper steps were taken by plaintiff to hold Wheeler & Co. as indorsers.

Wheeler & Co. then represented to plaintiff that the notes were due by the Harrison Wire Company to Wheeler & Co.; that it would be a great hardship on Wheeler & Co. that they should be sued; that the Harrison Wire Company was responsible, and would pay the notes; and gave to plaintiff certified checks of the confidential agent of the firm, upon a perfectly solvent bank, for the sum of $11,500, to hold as collateral security, upon the understanding that plaintiff would sue the Harrison Wire Company upon the notes; that, if they failed to recover in that action, the checks should be applied to pay the notes, interest, costs, and attorneys' fees; otherwise to be returned to Wheeler & Co.

Thereupon, plaintiff, through a mercantile agency, employed counsel in this city, and this action was commenced.

These facts are set up in the answer of defendants: (1) As payment; (2) as showing that plaintiffs are not the real party in interest; that the holders of the notes are Wheeler & Co.; and that defendants are merely accommodation makers of the notes; and (3), as matter of equitable defence, these matters are set up in a cross-bill, in which defendant claims that if by decree of court it pays these notes, it is entitled to have the certified checks, or so much thereof as will reimburse it for the moneys thus paid on account of Wheeler & Co. Defendant prays an order for the surrender of the checks, and for general relief, etc.

It is admitted that the checks are drawn against funds of Wheeler & Co. There is nothing to show that Wheeler & Co. are not perfectly solvent and responsible.

The trial court refused the following declarations of law asked by defendant : —

" The court declares the law to be, that if it appears from the evidence that the three notes described in the petition were sent by mail to the firm of E. S. Wheeler & Co., by defendant, to become the property of said firm if, and when, said firm should pay the three drafts of defendant on said firm for like amounts ; that thereafter defendant drew on said firm drafts corresponding in amounts to said notes, which said drafts said E. S. Wheeler & Co. failed to pay ; that notwithstanding their failure to pay said drafts, said firm of E. S. Wheeler & Co. sold and assigned by their indorsement, before maturity, the said notes to plaintiff; that thereafter, and before the commencement of this action, plaintiff was informed that said notes were without consideration in the hands of said E. S. Wheeler & Co., and that such sale and assignment thereof to plaintiff was a fraud on defendant ; that said notes were duly presented at the place of payment indicated therein, and payment was refused ; that said notes were thereupon duly protested for non-payment, and that said firm of E. S. Wheeler & Co. were duly notified, as indorsers of said notes, of such non-payment ; that thereafter said firm of E. S. Wheeler & Co. caused to be delivered to plaintiff three certified checks on the Mechanics' Bank, in the city of New Haven, a solvent banking corporation, to the amount of $11,500 ; that said certified checks were so delivered by plaintiff as a part of, and pursuant to, a fraudulent agreement between plaintiff and said firm of E. S. Wheeler & Co., entered into before the commencement of this suit; that plaintiff should bring this action against defendant, on said notes, in the interest and for the benefit of said firm of E. S. Wheeler & Co., and because defendant would have a perfect legal defence against said notes in the hands of said E. S. Wheeler & Co. ; and that it was further a part of said agreement that said firm

of E. S. Wheeler & Co. should pay to plaintiff all the costs and expenses of this suit, including lawyers' fees; and that this suit was brought in pursuance of said agreement so entered into as aforesaid, then plaintiff is not entitled to recover on either of the causes of action stated in this petition.''

In refusing this declaration of law, the learned judge of the trial court said : —

" Because the agreement referred to in this instruction between plaintiff and Wheeler & Co. was an agreement to do what plaintiff had a legal right to do in the absence of any such agreement, I hold that the purpose which may have actuated plaintiff in making the same was immaterial, and accordingly refuse the instruction.''

As plaintiff purchased the notes in suit before maturity, for value, without any notice of any equities between the maker and indorser, they were undoubtedly the owners of the notes, and had a right to sue the maker alone. Nor can we see that they have lost that right. The delivery of the checks in evidence was not a payment of the note. Not because the check was not money, — for a delivery of other things, if accepted by the other party, will discharge the debt in respect to which it was made, — but, because the check was not accepted as payment. The check was to be returned if the notes were collected by the holder of the maker. Plaintiff is clearly the holder and owner of the notes, for value, and the real party in interest. There is no evidence that the notes have been paid by the indorsers, or in any way taken up by them. It appears that, before this action was commenced, plaintiff was notified by an attorney representing defendant, that the notes had been retained and discounted by the indorsers by a fraud upon the maker. But the holder of the notes was under no legal obligation to accept this statement as true, to inquire into its truth, to sue the indorsers because this statement was made, or to abstain from suing the maker; and plain-

tiff, as the holder of negotiable paper purchased before maturity, for value, had a legal right to proceed first against the maker, and to receive certified checks from the indorsers to be applied to the payment of the notes and of all costs of the proceeding against the maker if, and when, the holder failed in his action against the indorser. It was the imprudence of the makers of the notes, and their confidence in the good faith and honor of Wheeler & Co., which put it in the power of the latter to negotiate these notes, for which they had never paid any value. But it would be contrary to the settled doctrine as to the rights of innocent holders of negotiable paper to affect the holders of this paper with the equities between the parties to it, of which they had no notice whatever. Any such a rule would have a disastrous effect, by shaking confidence in this class of securities.

Nor can an effect be given to the cross-bill of the defendants. Wheeler & Co. are not parties to this action. Plaintiff was under no obligation to bring them in. They are not residents of the state of Missouri. No decree made in this case would be binding upon Wheeler & Co., nor would any finding in the case be res adjudicata as to them. The right of Wheeler & Co. to a return of the checks deposited with plaintiff by them, cannot be litigated and determined in a proceeding to which they are not parties; and plaintiff's right to recover against defendants in no sense depends upon the matters in controversy between the maker and the indorsers of these notes.

Appellant contends that it is no objection to granting the equitable relief prayed in the counter-claim, that Wheeler & Co. are not parties to this suit; that the objection to the counter-claim should have been made by demurrer or reply; that not having been thus made, it is waived, and that the only result of the defect of parties would be that the judgment would not affect the interest of those not made parties.

But it is precisely because the judgment or decree would not bind the interests of those not made parties, that it is inequitable that such a decree should be made.   As matters now stand, the American National Bank is, by the terms of the agreement on which it received them, to return these checks to Wheeler & Co. on recovering against the Harrison Wire Company.   If the circuit court here, without having Wheeler & Co. before it, and without hearing from Wheeler & Co., on an *ex parte* and one-sided presentation of the facts, should decree that the bank is not to have execution against the Harrison Wire Company until it surrenders these checks to the Harrison Wire Company, it may be imposing upon plaintiff a condition with which plaintiff cannot comply without violating its agreement with Wheeler & Co., and perhaps exposing itself to a lawsuit.

The plaintiff here has a perfectly good legal cause of action on this note against the defendant alone.   It was not bound to make the indorser a party to the suit against the maker of the note, nor does a defect of parties, to be taken advantage of by demurrer to the answer, or by reply, arise when the defendants set up, that, as between the maker and indorser, the indorser ought to pay the note to the holder, owing to facts not appearing upon the paper, and of which the holder had no notice; that the holder, at the request of the maker of the note, is suing the indorser rather than the maker; and, that the maker has placed in the hands of the holder of the note securities sufficient to pay it, with the understanding that they are to be applied to the payment of the note in case the action against the maker fails.   If the defendant sets up an equitable defence the merits of which cannot be reached unless additional parties are made defendants to the action, it is for him to ask that they be brought in, and to show that they can be so subjected to the jurisdiction of the court that a decree may do substantial justice to all parties, and protect the plaintiff as well as the defendant.

The remedy of defendant, if the allegations of the answer represent correctly the transaction between it and Wheeler & Co., would seem to lie in a direct proceeding against Wheeler & Co., and the securities deposited by them with defendants and which are beyond the jurisdiction of the court before which this action is brought. In the absence of any proof of an illegal conspiracy to defraud defendant to which the plaintiff is a party, we see nothing in the evidence to warrant a judgment for defendant, or any equitable relief against the payment of the notes.

The judgment is affirmed.  Judge THOMPSON concurs; Judge LEWIS is absent.